SENECA INSURANCE COMPANY, INC., Appellant-Respondent, v CERTIFIED MOVING & STORAGE CO, LLC, et al., Respondents-Appellants. (And a Third-Party Action.) [920 NYS2d 320]—

This action arose out of plaintiff's claim that it was entitled to recover premiums due under a commercial general liability insurance policy issued to defendants. We reject plaintiff's argument that the documentary evidence, including the affidavits of its senior officers explaining the methodology used in calculating premiums, and all of the applicable Insurance Services Office (ISO) rules adopted by plaintiff regarding premium

computation, as well as its filed rates, was sufficient to make out a prima facie showing of entitlement to judgment as a matter of law (*see Commissioners of State Ins. Fund v Beyer Farms, Inc.*, 15 AD3d 273, 274 [2005], *lv denied* 5 NY3d 707 [2005]), as the extrinsic evidence failed to address the rating classification issue at the heart of this matter—how defendants' installers were to be classified in the context of the moving and storage industry.

Equally unavailing is defendants' argument that the opinion of its expert requires as a matter of law the conclusion that its installation payroll was "incidental" to the moving and storage industry, and that plaintiff's attempt to separately classify and retroactively calculate the installation payroll deviated from standard underwriting practices in connection with this industry. Because the expert's affidavit demonstrates no personal knowledge of defendants' installation operations, or how ISO rules pertaining to "helpers" would preclude defendants' installers from its premium calculations (*see e.g. Santoni v Bertelsmann Prop., Inc.*, 21 AD3d 712, 714-715 [2005]), it merely creates a question of fact as to the proper manner of calculating Certified's premium. The absence of a competing expert's affidavit does not require a grant of summary judgment under these circumstances. Similarly, the issue of how ISO rules and tables should be interpreted or applied is best left to trial.

Plaintiff's request to dismiss defendants' remaining affirmative defenses was properly denied, as the documentary evidence and deposition testimony presented issues of fact as to whether defendants intentionally concealed payroll, or whether plaintiff improperly calculated premium (*see Morgenstern v Cohon*, 2 NY2d 302, 307 [1957]).

Plaintiff's request to amend the ad damnum clause to reflect the proper amount of unpaid insurance premiums allegedly due on the basis of defendants' payroll records, although misdescribed as a request for an order "conforming the pleading to the proof," should have been granted, in view of the absence of prejudice to defendant (*see* CPLR 3025 [b]; *Loomis v Civetta Corinno Constr. Corp.*, 54 NY2d 18, 23 [1981]).

We find the remaining arguments unavailing. Concur—Tom, J.P., Saxe, Renwick and DeGrasse, JJ.

Catterson, J., dissents in part in a memorandum as follows: Because in my opinion the motion court erred in denying summary judgment to defendants, Certified Moving & Storage and Certified Installation Services LLC (hereinafter referred to as Certified), I must respectfully dissent from that part of the majority opinion affirming the denial. This action arises from a

claim by plaintiff insurer (hereinafter referred to as Seneca) that Certified owes it more than $1 million in retroactive premiums on a commercial general liability policy it issued for three policy periods between 2002 and 2004. Resolution of the claim requires a determination as to how the premiums should have been calculated.

It is undisputed that payrolls are the basis for premium calculations in this case. Certified asserts that Seneca's initial underwriting decision, which remained in effect through two renewals as well as an inspection and audit, is correct. The initial premium calculation was based on a $1 million payroll for the sole classifications of truckers and warehousemen which, Certified claims, comported with certain rules and ratings classifications developed by the Insurance Services Office (hereinafter referred to as ISO).

Seneca, however, now alleges that Certified misled it as to the work conducted by employees of Certified Installation, and that the Installation payroll should have been included for use in the premium calculations. Certified denies any misrepresentation, and points to its policy application which shows, inter alia, that in the section titled "schedule of hazards" Certified very clearly and legibly entered in bold print: MOVING OPERATIONS INCLUDING INSTALLATIONS.[1]

Certified further asserts that installers were correctly omitted from the calculation of premiums because in the moving and storage industry installations are part of loading and unloading; that these are tasks performed by drivers and their helpers; and that these classifications are excluded from commercial general liability policies to the extent that the policy itself excludes "any loss related to the use of a vehicle which includes operation and loading or unloading."

Certified's assertion is supported by the affidavit of an expert on insurance coverage for moving and storage companies. The expert states he has underwritten insurance coverage for more than 250 moving and storage companies including current coverage for Certified, and that he has specialized in insurance for the industry since 1957.[2] He states that in Certified's case, the payrolls for Moving & Storage and Installation are segregated because of union rules, but that the work done by employees in

---

**1.** It appears that Seneca is the party that misleads here, stating instead that under schedule of hazards Certified *"only"* listed receipts." Likewise, Seneca states in its preliminary statement that it had to commence this action in 2005 "[in] order to obtain any payroll records" of Installation. In fact, the record reflects that Certified provided those records in July 2004.

**2.** A breadth of experience that commenced a year before the author of this dissent was born.

both companies is essentially the same. He further states that installations are part of moving operations and are generally performed by the same persons who drive, load and unload the moving trucks (that is, drivers and helpers). He attests that these are classifications and payrolls that Seneca correctly omitted from its initial calculations. Significantly, Seneca does not seek to retroactively include these.

I am persuaded by Certified's assertion that the opinion of its expert supports a conclusion that its installations payroll is "incidental" to the moving and storage industry. Further, its expert's opinion supports a conclusion that Seneca's attempt to add a separate classification for installers to retroactively calculate premiums based on the installation payroll deviates from standard underwriting practices in connection with the moving and storage industry.

Consequently, I believe the motion court erred in rejecting the affidavit of Certified's expert. The court's reliance on our decision in Jones v City of New York (32 AD3d 706 [1st Dept 2006]) is misplaced. As Certified correctly asserts, expert testimony relating to the custom and practice of an industry is distinguishable from engineering or scientific testimony requiring data.

In any event, the qualifications of Certified's expert were unchallenged, and his affidavit is uncontroverted by Seneca. Nor does Seneca proffer contrary expert testimony. More significantly, Seneca's documentary evidence, including ISO rules which purport to explain the methodology and application of the rules in the recalculation of Certified's premiums fails to raise a triable issue of fact: the ISO classification table submitted by Seneca shows that payroll is used as a basis for calculating general liability premiums for furniture installation. However, as the motion court correctly observed, this was not evidence that a separate classification of installers comports with ISO rules as applied to the moving industry.

Accordingly I would grant summary judgment to defendant Certified, and otherwise affirm.